# WILLIAM H. GRUBEY

## v.

# THE NATIONAL BANK OF ILLINOIS.

*Negotiable Instrument—Note—Gaming—Board of Trade—Options—*
*Evidence.*

1. A question, the answer to which would not be relevant to the issue, should not be asked.

2. Nor should a question as to a witness' understanding, based upon a certain conversation; the witness must give a narration of the facts, and any conversation testified to must be given in the words, or the substance thereof stated.

3. Nor as to whether a third person made a report as to certain transactions, without stating when, nor where a question is hearsay.

4. In an action brought to recover upon a promissory note, the defense being that the consideration thereof was made up of losses in gambling transactions upon the Board of Trade, this court declines, in view of the evidence, to interfere with the judgment for the plaintiff.

[Opinion filed February 12, 1890.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Messrs. FRANCIS A. RIDDLE and JOHN S. STEVENS, for appellant.

Mr. M. P. BRADY, for appellee.

The law is well established in this State by numerous adjudications by this court and by the Supreme Court, that contracts for the sale or purchase of commodities, deliverable in the future, are not within the prohibition of the statute, even though the party selling for future delivery has not the commodity on hand at the time of sale. Logan v. Musick, 81 Ill. 415; Pixley v. Boynton, 79 Ill. 351; Sanborn v. Benedict, 78 Ill. 309; Wolcott v. Heath, 78 Ill. 433.

To hold that a contract is void under the statute, it must be proven that it was merely colorable; that the parties did not intend to actually buy or sell, and that their real intention was to adjust or settle differences in prices caused by the fluctua-

tions of the market between the time of making the pretended contract and some time in the future—in a word, to gamble. Tenney v. Foote, 4 Ill. App. 594, affirmed in 95 Ill. 99.

The effect of the testimony of appellant, and the evidence furnished by the circumstances of the case is, that appellant, by delivering the note to Henrotin, sent him forth as his agent to obtain money for it by a sale thereof to the bank, and that the consideration of the note was the money the bank gave for it. Therefore, even did the evidence show that a part of the balance of account due Henrotin, to pay which the money to be obtained on the note was intended, resulted from a gambling transaction, the bank would not be affected by it, and would be entitled to enforce collection of the note. Roberts v. Blair, 16 P. Reporter, 717; Krahe v. Alexander, 9 S. E. Reporter, 991; Bangs v. Hornig, 30 Fed. Rep. 97; Hoyt v. Cross, 14 N. E. Rep. 801.

There is no evidence that the bank was in anywise connected with the transaction on which the claim against appellant arose, nor that it had any knowledge or was chargeable with notice of the purpose to which the money raised on the sale of the note was to be applied. Nor, indeed, is there any evidence that any part of the amount of Henrotin's claim against appellant was based upon an illegal transaction or consideration.

GARNETT, J. To a suit by appellee against appellant on his promissory note for $1,000, the defendant set up as a defense that the consideration for the note was made up of losses in gambling transactions on the Board of Trade, in Chicago. Appellant testified in his own behalf, and put in evidence numerous statements of account rendered to him by his broker, Charles Henrotin. No other evidence for the defense was given. The statements set forth a large number of purchases and sales of stock, grain, pork, and "puts" and "calls."

On the trial appellant was asked this question: "What do you mean by "calls" and "puts?" Appellee's objection to

the question was sustained by the court, and appellant
excepted to the ruling. It was immaterial what the witness
meant by " calls " and " puts." We must presume that an
answer to the question would not have disclosed the meaning
of the terms on the Board of Trade, and their meaning to
appellant was not relevant to the issue.

To this question, " What understanding, if any, did you have
with him (Henrotin) at that time, with reference to the
character of the business to be done," the court also sustained
an objection. It is the business of a witness to give a narra-
tive of facts, and any conversation he testifies to he must
give in the words used, or he must state the substance of what
was said. His understanding is merely his conclusion, which
may or may not be warranted by the facts. Hewitt v. Clark,
91 Ill. 605; Bragg v. Geddes, 93 Ill. 39.

The next question to which appellee's objection was sus-
tained, was : "I will ask you whether or not Mr. Henrotin
reported to you as having bought and sold the several articles
and amounts represented in these papers ? " The ruling of the
court was right for two reasons : 1. No time was referred to,
in the question, as to the supposed report by Henrotin. The
answer might have been based upon what Henrotin reported to
him, just before the witness was called to testify. 2. The
evidence sought by the question was hearsay. The issue was
not as to what Henrotin told Grubey, but as to the actual
facts connected with the transaction.

The defendant having testified that he never received,
delivered or paid for any of the articles purchased or sold,
was asked how the several transactions shown on the state-
ments of account were in fact settled between him and his
broker. Again the court sustained ˏplaintiff's objection to
the question. The transactions were *not* between the appel-
lant on the one side and Henrotin on the other, but between
appellant and third parties. .What the facts were could only be
shown by placing Henrotin or the third parties on the stand.
What Henrotin reported to appellant was hearsay. What
settlements were made between appellant and Henrotin was
immaterial and had no tendency to prove that Henrotin had,
as agent for appellant, engaged in gambling transactions with

third parties. Settlements between the principal and his agent, on the basis of differences only, through a long and unbroken series of transactions, might be competent evidence of the unlawful character of the transactions as between the principal and agent, but could not be received as evidence against appellee, an entire stranger to the business. So far as appellee is concerned such settlements do not tend to prove that the broker, acting for his principal, did not receive and pay for grain purchased, or delivered such as he had sold.

The statements of account certainly prove nothing more as against appellee than Henrotin's oral report to appellant would prove, and as appellant testified that Henrotin transacted all the business for him, and that he gave it no personal attention, it follows that there really was no admissible evidence tending to prove that the considerations for the note was made up of losses on gambling contracts. If Henrotin had been called as a witness by the defendant, it can not be pretended that it would have been competent to prove by him that he told the defendant that the transactions were of a gambling character. The reason is the same in either case, that is, the defense of the principal can not be proved by statements made to him by his agent.

The comments made upon the rulings referred to, apply with equal force to the assignment of error, which complains of the refusal of the court to permit the witness to answer other questions.

The note sued on was made payable to appellant's own order, and indorsed by him to the order of the appellee. He testified that he gave the note to Henrotin, and that "he raised the money on it the same as the others." From this evidence the inference is very strong that the note was given to Henrotin in his capacity of broker for appellant, for the purpose of raising money for appellant, and not as payment to Henrotin on account of commissions and losses on the Board of Trade. The burden of proof was on appellant to make out his defense, which we think he has clearly failed to do.

The judgment is affirmed.

*Judgment affirmed.*